[Civ. No. 1260. Fifth Dist. July 15, 1970.]

GRIFFITH CONSTRUCTION CO. et al., Petitioners, v.
WORKMEN'S COMPENSATION APPEALS BOARD,
JUAN GUTIERREZ et al., Respondents.

608

---

---

## COUNSEL

Bradley, Wagy, Bunker, Hislop & Leddy and Jack W. Bradley for Petitioners.

Hanna & Brophy, Warren L. Hanna and D. R. Brophy as Amici Curiae on behalf of Petitioners.

Sims & Solomon, William M. Sims, Rupert A. Pedrin and Lionel K. Hvolboll for Respondents.

---

## OPINION

**STONE, P. J.**—Petitioners seek annulment of decision, after reconsideration by the Workmen's Compensation Appeals Board of its decision, holding that respondents Juan Gutierrez, Johnny Eugene Moore, Soledad 

Vidaurri and Charlotte Magsby were not barred from receiving workmen's compensation by reason of the going and coming rule.

Juan Gutierrez, Johnny Eugene Moore, Frank Vidaurri, Theodore Magsby and Jack Moore of Bakersfield were employed by petitioner Griffith Construction Co. at a job site near Mojave on the Tehachapi Desert, some 73 miles from Bakersfield. The five men, all of whom lived in Bakersfield, had formed a car pool to provide transportation to the job site. On December 4, 1968, they left for work about 5:40 a.m., in an automobile owned by Frank Vidaurri but driven by Theodore Magsby. They stopped at Tehachapi and purchased lunch supplies at a delicatessen store. Between Tehachapi and Mojave the vehicle was involved in a one-car crash, killing Theodore Magsby and Frank Vidaurri. Johnny Moore and Juan Gutierrez were injured.

Because of the distance from their home base to the job site, each of the employees was paid a sum in addition to his salary. ▌ The controversy centers upon the question whether the additional compensation constituted "subsistence pay," as the master contract between the union and the Southern California Chapter of Associated General Contractors designated it, which would exclude them from the benefits of the Workmen's Compensation Act, or whether they were paid the additional compensation to cover extra travel time and travel expense, bringing them within an exception to the exclusionary going and coming rule. (*Zenith Nat. Ins. Co.* v. *Workmen's Comp. App. Bd.,* 66 Cal.2d 944, 947 [59 Cal.Rptr. 622, 428 P.2d 606]; *Garzoli* v. *Workmen's Comp. App. Bd.,* 2 Cal.3d 502, 505 [86 Cal.Rptr. 1, 467 P.2d 833].)

The labor relations director for the Southern California Chapter of Associated General Contractors testified that the intent when the contract was negotiated was to reimburse employees for out-of-pocket expenses incurred when living away from home. The business manager for the Southern California District Council of Laborers testified that in 1955, when the contract was negotiated, the employees made a demand for travel pay and subsistence but the union settled for subsistence pay only. However, he said ". . . it was certainly contemplated that the subsistence allowance would reimburse the employee for out-of-pocket expenses in traveling to and from his job."

▌ The controlling principle is stated in *Zenith Nat. Ins. Co.* v. *Workmen's Comp. App. Bd., supra,* 66 Cal.2d at page 947, as follows: "Since the going and coming rule rests upon the basis that the employer-employee relationship lapses during the employee's off-duty absence from the job, [fn. omitted] the rule does not apply in the event that the relationship in fact continues. . . . courts have recognized exceptions to the rule upon

a showing that the employer furnished transportation to the worker, or compensated him for travel time or defrayed his travel expenses." Petitioners point out that the laborers' contract provided "Employees shall travel to and from their work on their own time and by means of their own transportation."

The facts of the case presented the board with a dilemma: the contract provided that the workers would travel on their own time and by their own means of transportation, yet the same contract provided for subsistence pay which, in this case, the employees of necessity applied to the cost of transportation and to reimburse themselves for the above average travel time necessary to commute some 154 miles per day to and from work.

Petitioners argue that the employees could utilize their subsistence pay to live at the job site, and not spend as much time as they did on the road morning and night, and avoid unusual car expense. But, the board had before it evidence that the job site was in a remote area bordering the Tehachapi Desert where the only accommodations were in the little Town of Mojave and, it would appear, although it is not clear from the record, these were occupied by workers from the Los Angeles area who could not drive back and forth to work each day. Petitioners point out that one employee lived at the job site in a trailer, and assert that other employees also could have moved trailers to the site. This argument overlooks two significant factors, first, the employee could not be expected to invest several hundred dollars in a trailer for a few weeks' work or, at the most, a few months' work, while receiving $10 or so per day subsistence pay, and second, the employer could have furnished trailer accommodations and a cook house so that employees could live at the job site for the additional $10 a day they were paid.

The facts peculiar to the case give it the color of an exception to the general rule, as the only justification for extra pay was that the job site was in a remote semi-desert area without available living accommodations, yet within daily, although lengthy, driving distance from the employees' homes.

Petitioners argue that to alter the terms of the union contract it must be shown that there was an agreement between the employer and the employee to modify the contractual status of the additional pay from "subsistence," as denominated in the master agreement, to "travel pay," which it was in fact. But such an agreement can be implied from the knowledge and conduct of the parties; it need not be express. In *Zenith*, at page 947, we find the following: "As this court held in the *Kobe* case:

'[T]he employer may agree, either expressly or impliedly, that the [employment] relationship shall continue during the period of "going and coming," in which case the employee is entitled to the protection of the act during that period.' (P. 35.) The court pointed out that if the employer compensated the employee for travel time or if the employer furnished the employee transportation to and from work, injuries sustained by the employee during travel may be compensable. (*Kobe* v. *Industrial Acc. Com., supra*, 35 Cal.2d 33, 35 [215 P.2d 736], see also *United States Fid. & Guar. Co.* v. *Donovan* (1954) 221 F.2d 515, 517.)"

Here, the employer certainly was aware of the location of the job site in a remote area and the paucity of living accommodations at the job site or in the immediate vicinity. From this the employer could reach no other conclusion than that employees able to drive from their homes to the job site would do so if compensated for the time and expense of traveling. These are the facts and, as employer and employees were both aware of them, the board was justified in finding a tacit agreement, a mutual but unexpressed understanding, that the employees were not donating two or three hours a day to travel beyond normal limits, without compensation.

It is also significant that the employees in the instant case did not incur additional living costs because of the job location; they lived at home and such costs remained the same, while their transportation costs increased substantially, as did the time consumed in going and coming. It is absurd to argue that the extra pay was for subsistence when, in fact, it was not and both the employer and the employees knew this.

Petitioners also raise the point that the employer had no control over the manner in which the employees traveled back and forth to work. The answer lies in the *Zenith* case, wherein the court said, at pages 948-949: "Indeed the court . . . also emphasized the fact that the employer 'exercised no control over the means of transportation nor route chosen by the employee' and that the employee 'was not compensated . . . for the time required to travel to and from work.' (P. 534.) [Fn. 3 omitted.] To the extent that the Court of Appeal suggested that the travel expense exception does not apply unless the employer himself controls the mode of transportation or compensates the employee for his travel time, it imposed novel conditions which we do not approve."

It is suggested that there is an aura of benevolent gratuity in the formulation of exceptions to the going and coming rule. There is, of course, no gratuity about it; the Legislature has directed the courts to liberally construe the provisions of the Workmen's Compensation Act with the purpose of extending its benefits for the protection of persons injured in

the course of their employment (Lab. Code, § 3202), and the courts time and again have stressed this rule. (*Garzoli* v. *Workmen's Comp. App. Bd.,* *supra,* 2 Cal.3d at p. 505.)

The decision of the Workmen's Compensation Appeals Board is affirmed.

Gargano, J., concurred.